■ THRIFT ASSOCIATIONS SERVICE CORPORATION, Respondent-Appellant, v LEGEND OF IRVINGTON JOINT VENTURE et al., Defendants, and IRVINGTON JV CORP., Appellant-Respondent. —In an action, inter alia, to foreclose three mortgages, the defendant Irvington JV Corp. appeals from (1) so much of an order of the Supreme Court, Westchester County (Coppola, J.), entered March 31, 1988, as granted that branch of the plaintiff's motion which was for summary judgment "with respect to the First and Second Mortgages described in paragraphs 7 and 8 of the verified complaint", and (2) an order of the same court, entered June 1, 1988, which denied its motion denominated as one for leave to renew. The plaintiff cross-appeals from so much of the order entered March 31, 1988 as denied

its motion for summary judgment "with respect to the Third Mortgage described in paragraph 9 of the verified complaint".

Ordered that the appeal from the order entered June 1, 1988 is dismissed; and it is further,

Ordered that the order entered March 31, 1988 is affirmed; and it is further,

Ordered that plaintiff is awarded one bill of costs payable by the defendant Irvington JV Corp.

The defendant, Irvington JV Corp. (hereinafter Irvington), and Tascorp Properties Inc., a wholly owned subsidiary of the plaintiff, Thrift Associations Service Corporation, entered into a joint venture agreement dated June 15, 1984, for the construction of 73 condominium townhouse units located in the Village of Irvington. The name of the joint venture was Legend of Irvington Joint Venture (hereinafter Legend).

On July 30, 1984, Legend and the plaintiff executed a mortgage agreement and a building loan agreement (hereinafter first mortgage), pursuant to which the plaintiff agreed to make advances of up to $7,000,000. The advances were to be made at the plaintiff's "sole discretion", based upon certifications submitted by an architect, engineer or other person approved by the plaintiff. A second building loan mortgage and a related building loan mortgage note and supplemental building loan agreement were executed on December 20, 1985. The amount thereby secured was $2,000,000. As with the first mortgage, advances were to be made at the plaintiff's "sole discretion", based on the aforementioned certifications.

By February 1987 over $10,000,000 had been advanced by the plaintiff. A third mortgage was subsequently prepared and executed by Tascorp's president but, unlike the other two mortgages, was not executed by Irvington. This mortgage was filed with the Westchester County Clerk on or about August 7, 1987.

Legend defaulted on these mortgages when it did not pay the principal and accrued interest on the maturity date of August 1, 1987. The plaintiff commenced this action alleging that $9,842,618.90 in principal and accrued interest were due and owing. The plaintiff then moved for summary judgment. The motion was granted as to the first two mortgages and denied as to the third. The Supreme Court noted that as to the third mortgage, Irvington might have a viable counterclaim. The court denied a subsequent motion by Irvington, denominated as one for renewal, and adhered to its original determination.

Irvington appeals the first order of the court as to the first two mortgages and plaintiff cross-appeals as to the third. Additionally, Irvington appeals from the court's denial of its motion to "renew". We affirm.

Irvington does not contest the fact that the joint venture was in default on the maturity date of the mortgages. Rather, Irvington argues that the plaintiff improperly refused to provide timely payment of cash advances. Allegedly, this slowed the project, causing a "cash flow" problem which made it impossible to construct and sell condominium units in a timely manner. Irvington alleges that this, in turn, directly brought about the default.

Irvington's argument is without merit. Under the mortgage agreements, the plaintiff had broad discretionary power with respect to the manner and timing of the advances that were to be made to Legend. There is absolutely no indication in the record that the plaintiff exercised this power in an unconscionable or oppressive manner. Irvington has thus failed to raise a factual issue which would relieve it from its default and the court's order with respect to the first and second mortgages was therefore proper (see, Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 183; Lombardi v Pisari, 77 AD2d 646, 647).

With respect to the third mortgage, we also find that the court's action was proper. In this regard, it appears that at the time he executed the mortgage, Tascorp's president, Gerald M. Calvario, was also the president of the plaintiff. In its counterclaim with respect to this mortgage, Irvington alleges that the plaintiff, through the activities of Calvario, committed "tortious and improper" acts through the filing of the mortgage without its consent. Given the fact that only Tascorp, and not Irvington, executed this mortgage, summary judgment was properly denied (see, Snyder v Potter, 134 AD2d 664).

In its motion denominated as one to renew, Irvington submitted extensive documentation with respect to the project. No valid excuse was offered as to why this information was not submitted upon the original motion and hence the denial of the second motion was proper (see, Foley v Roche, 68 AD2d 558, 568). In this regard, it is uncontroverted that Irvington had full access to all the documentation it sought to submit at least six days before it submitted its opposition papers to the summary judgment motion. Since this documentation was available to Irvington at the time of the original motion, the

motion should properly be denominated as one for reargument, the denial of which is not appealable *(see, e.g., Mgrditchian v Donato,* 141 AD2d 513). In any event, as the Supreme Court found, Irvington's second motion is merely a rehash of its original argument and there is nothing therein that would justify a departure from the court's original determination. Mollen, P. J., Thompson, Rubin and Spatt, JJ., concur.